```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF TEXAS
                   DALLAS DIVISION

UNITED STATES OF AMERICA,  )
                           )
     Plaintiff,            )
                           )
vs.                        ) 3:09-CR-00210-B-1
                           )
JESSE WILLIAM MCGRAW,      )
                           )
     Defendant.            )
```

```
              REVOCATION HEARING
       BEFORE THE HONORABLE JANE J. BOYLE
          UNITED STATES DISTRICT JUDGE
                JANUARY 11, 2018

             A P P E A R A N C E S
```

For the Government:

    UNITED STATES ATTORNEY'S OFFICE
    1100 Commerce Street - 3rd Floor
    Dallas, TX  75242
    214/659-8600
    BY:  CANDINA HEATH

For the Defendant:

    LAW OFFICES OF MATTHEW ARNOLD
    3500 Maple Avenue - Suite 400
    Dallas, TX  75219
    214/418-9346
    BY:  MATTHEW ARNOLD

COURT REPORTER:  SHAWNIE ARCHULETA, TX CCR No. 7533
                 1100 Commerce Street
                 Dallas, Texas 75242

proceedings reported by mechanical stenography,
transcript produced by computer.

```
 1                  (In open court at 2:14 p.m.)
 2                  THE COURT:  Okay.  This is a supervised
 3    release revocation, U.S. v. Jesse William McGraw,
 4    3:09-CR-210.
 5                  For the government.
 6                  MS. HEATH:  Candy Heath for the
 7    government.
 8                  MR. ARNOLD:  Matthew Arnold for the
 9    defendant.
10                  THE COURT:  All right.  Good afternoon,
11    Mr. McGraw.
12                  THE DEFENDANT:  Good afternoon, ma'am.
13    How are you?
14                  THE COURT:  I'm pretty good.  How are you?
15                  THE DEFENDANT:  I'm fine.  Thank you so
16    much.
17                  THE COURT:  We are here today because
18    there's been a petition -- well, excuse me.
19                  (Pause in the proceedings.)
20                  THE COURT:  Please be seated.  Try that
21    again.
22                  I have three different documents,
23    Mr. McGraw, that charge you with violations of your
24    supervised release.  So I want to talk about each
25    one and see what you and your counsel's position is.
```

```
 1              Have you had a chance to talk to him about
 2   these petitions?
 3              THE DEFENDANT:  Yes.  Yes, ma'am, I have.
 4              THE COURT:  The first petition I'm looking
 5   at is Document 121 in the docket.  It's signed by
 6   this Court, November 15th, 2017.
 7              Are you familiar with this petition?
 8              THE DEFENDANT:  Yes, ma'am, I am.
 9              THE COURT:  Have you had a chance to
10   thoroughly review these allegations with your
11   counsel?
12              THE DEFENDANT:  Yes, I have, ma'am.
13              THE COURT:  Do you understand what you
14   have been alleged to have done?
15              THE DEFENDANT:  Yes, ma'am, I do.
16              THE COURT:  You have the right to have
17   this full document read to you in open court, or you
18   can waive that right.
19              How do you wish to proceed?
20              THE DEFENDANT:  I would prefer to waive
21   that.
22              THE COURT:  Then I have a supplemental
23   petition, Document 132, which adds an allegation --
24   again, these are both Form 12(c)s, as we call them,
25   signed by the Court on December 18th.  Has to do
```

1  with the allegation you left the judicial district
2  without permission in violation of your mandatory
3  condition.
4           Have you had a chance to review that
5  carefully?
6           THE DEFENDANT:  Yes, ma'am, I have.
7           THE COURT:  You have to let me finish.
8           You have read this?
9           THE DEFENDANT:  Yes.
10          THE COURT:  You understand it?
11          THE DEFENDANT:  Yes, I do.
12          THE COURT:  You have a right to have this
13 document read in open court, or you can waive it.
14          How do you wish to proceed?
15          THE DEFENDANT:  I prefer to waive it.
16          THE COURT:  Last, I have a motion to
17 revoke supervised release -- that's Document 133 --
18 in which the government proceeds under
19 18 U.S.C. Section 3583 to revoke your supervised
20 release based upon a number of allegations separate
21 and apart, as I understand it, from what's in these
22 first two petitions.
23          Is that right, Ms. Heath, these are
24 separate allegations?
25          MS. HEATH:  Yes, Your Honor.

```
 1              THE COURT:  Have you had a chance to look
 2  this over?
 3              THE DEFENDANT:  Yes, ma'am.  Yes, ma'am, I
 4  have.
 5              THE COURT:  And do you understand this
 6  document?
 7              THE DEFENDANT:  Absolutely, I do.
 8              THE COURT:  Understand all the
 9  allegations?
10              THE DEFENDANT:  Yes, I do.
11              THE COURT:  And have you had a chance to
12  talk again thoroughly with your counsel about this?
13              THE DEFENDANT:  Yes.  Yes.
14              THE COURT:  And just to clarify, I know,
15  Mr. Arnold, these were newer allegations.
16  Essentially this last one from the government was
17  filed one day after the other.  But we had some
18  concern last time that you hadn't had a chance to
19  review them.  I'm assuming now, three weeks into it,
20  you have had a chance to review the government's
21  allegations.
22              MR. ARNOLD:  Yes, Your Honor.
23              THE COURT:  Okay.  So you are ready to
24  defend those today?
25              MR. ARNOLD:  Yes, Your Honor.
```

1      THE COURT:  Okay.  So now that we've --
2  again, if I haven't said this, Mr. McGraw, I can
3  read this full document that the government filed,
4  Document 133, here to you in open court, or you can
5  waive that right.  How do you wish to proceed?
6      THE DEFENDANT:  I prefer to waive that,
7  please.
8      THE COURT:  Okay.  So you said you talked
9  to your lawyer about the allegations in Document
10 121, the 12(c); Document 132, the supplemental
11 12(c); and Document 133, the government's motion to
12 revoke your supervised release.
13      And I'm going to turn, then, directly to
14 Mr. Arnold.  Do you agree you have talked to him
15 about all of these?
16      MR. ARNOLD:  Yes, Your Honor.
17      THE COURT:  How does he wish to plead to
18 these allegations?
19      MR. ARNOLD:  He wishes to plead true, Your
20 Honor.
21      THE COURT:  All right.  Mr. McGraw, let
22 me, if I could swear you in, raise your right hand.
23      (The Defendant was sworn.)
24      THE DEFENDANT:  Yes, ma'am, I swear.
25      THE COURT:  Do you agree, Mr. McGraw, that

1  you plead true to each of the allegations contained
2  in these three documents we have just been through?
3              THE DEFENDANT:  Yes, ma'am, I do.
4              THE COURT:  So with that, the Court finds
5  that there's a preponderance of the evidence to find
6  the allegations and the violations occurred, and I
7  guess the next question, then, is, what's the proper
8  disposition of this hearing?
9              And I will turn to you first, Mr. Arnold,
10 for your position on that.
11             MR. ARNOLD:  Your Honor, since his
12 criminal history category is I and the violation
13 grade is C, we're looking at the guideline range of
14 3 to 9 months.
15             THE COURT:  Right.
16             MR. ARNOLD:  Mr. McGraw understands that
17 he messed up, that he was -- when he was initially
18 released and put on supervised release, he was doing
19 very well.  He's no longer in the hacking game,
20 which is what, you know, got him in trouble with
21 this case to begin with.
22             He is a man of increasingly deep religious
23 faith.  As you can see from the allegations that the
24 government's made, he had access and posted some
25 stuff on social media, so thus he had access to

```
 1  computers and stuff like that.  You can see that
 2  just from the content that he puts on there that he
 3  has -- feels moved to express his religious views
 4  freely.  And it appears that in a moment of
 5  religious passion, he felt like he needed to do
 6  these actions that basically violated the Court's
 7  supervised release.
 8          I've had discussions with Mr. McGraw, you
 9  know, on how immature that is an expression of his
10  faith and how he really needs to try to, in essence,
11  render under Caesar the next three years what is
12  Caesar's so he can relocate if that's what he wants
13  to do.  He understands that now, and he's expressed
14  a willingness on his part to go ahead and tow the
15  line.
16          THE COURT:  Okay.
17          MR. ARNOLD:  So I would hope that the
18  Court would sentence him on the lower range of the
19  guidelines.
20          THE COURT:  Thank you very much.
21          Mr. McGraw, what would you like to say?
22          THE DEFENDANT:  First and foremost, I do
23  want to apologize.  It is right what he said to
24  render under Caesar what is Caesar's.  I am guilty,
25  and I accept responsibility for it.  Whatever is
```

1    true and just in your eyes, then that's what's going
2    to happen.
3              Again, I do take the responsibility.  I
4    have to do what is required of me, and I didn't do
5    that.  So it's in your court, ma'am.
6              THE COURT:  All right.  All right.  If
7    you-all will step aside, I would like to hear from
8    the government.  Ms. Heath has been involved with
9    this as long as Mr. McGraw, so I would like to hear
10   her perspective on all of this.
11             MS. HEATH:  Your Honor, the only thing I
12   disagree with on the presentation is that
13   Mr. McGraw's decision to violate the conditions was
14   not necessarily in a moment of religious passion.
15   From the information we have received through
16   Mr. McGraw's own postings, as well as some of his
17   conversations from the jail, is that he had planned
18   this while he was still in custody, while he was in
19   transition from Bureau of Prisons to the halfway
20   house, while he was in the halfway house.  He had
21   planned to not only post these things, open
22   accounts, he had planned to leave the country.  So
23   it was always his intent not to stay in the country,
24   not to abide by his conditions of supervised
25   release.

```
 1              So we would ask the Court to sentence him
 2   in the mid to upper range of the time available.
 3   And then, when re-released on supervised release, to
 4   impose a condition to include at least some sort of
 5   electronic monitoring, GPS locater device for at
 6   least as long as it takes probation to be
 7   comfortable with the fact that he's going to remain
 8   within a particular location, if not within the city
 9   that he has been restricted.
10              THE COURT:  All right.  Thank you.  Come
11   on back over.  Mr. Arnold, what's your position on
12   all of that?  I would like to hear your response to
13   all of that.
14              MR. ARNOLD:  My client has indicated to me
15   that he did, you know, plan on doing this for some
16   time, and he understands that he can't do that.  And
17   I think that some type of electronic monitor would
18   be appropriate, and I think my client would agree to
19   that.
20              THE COURT:  All right.  Well, I'm pleased
21   to see, today, Mr. McGraw, that at least your
22   attitude -- and I hate to sound patronizing -- but
23   your maturity level seems to have changed a bit for
24   the positive since the last time I saw you.  My
25   concern last time was just the whole underlying
```

```
 1   crime didn't really seem to have any motivation
 2   other than just hurting people, and I think I said
 3   that to you during the sentencing.
 4             I think if I consider all of the
 5   appropriate 3553 factors, and I am, that six months
 6   in custody is fair, not more than it should be to
 7   carry out the purposes of the sentencing statutes as
 8   they apply in this context, and that would leave us
 9   with 30 months supervised release.  Is that right?
10   I've got 36 months minus --
11             USPO:  Yes, Your Honor.
12             THE COURT:  All right, thank you.  So 30
13   months supervised release with six months in
14   custody, and then I will add the electronic
15   monitoring requirement.
16             And Mr. McGraw, you have a right to appeal
17   this sentence.  If you decide to appeal, you are
18   entitled to court-appointed counsel to represent you
19   for the appeal.  If you want to appeal, it must be
20   timely.  You must file a notice of appeal within 14
21   days of the date the Court enters its judgment in
22   this case.
23             Any questions?
24             THE DEFENDANT:  No, ma'am.  No questions.
25             THE COURT:  Anything from Mr. Arnold?
```

```
 1                MR. ARNOLD:  No, Your Honor.
 2                THE COURT:  Ms. Heath?
 3                MS. HEATH:  No, Your Honor.
 4                THE COURT:  Probation?
 5                USPO:  Your Honor, on the electronic
 6   monitoring time period, is there a specific time?
 7                THE COURT:  In what regard?
 8                USPO:  To the length?
 9                THE COURT:  I think it should be
10   throughout the rest of the supervised release.  Now,
11   I will be open to, because I know this is somewhat
12   of a burden on probation, to some consideration that
13   it's going fine, let's go ahead and take him off of
14   it, and I will look for that.  And if probation
15   recommends it, I will go along with it.  But for
16   right now, I hate to do an arbitrary period of time,
17   not knowing how this is going to go.
18                USPO:  Okay.
19                THE COURT:  All right.  So let's just
20   leave it open, but you can come to me when you think
21   it's time to terminate it.
22                USPO:  Understood.
23                THE COURT:  All right.  Thank you.
24                If there's nothing else, then Mr. McGraw
25   is remanded to federal custody with all of the same
```

1  conditions of supervised release plus the additional
2  one he has previously been on.
3             Let's move on to the final case.
4             (Court in recess at 2:27 p.m.)

SHAWNIE ARCHULETA, CSR/CRR
FEDERAL COURT REPORTER – 214.753.2747

```
 1                    C E R T I F I C A T E
 2             I, Shawnie Archuleta, CCR/CRR, certify
 3   that the foregoing is a transcript from the record
 4   of the proceedings in the foregoing entitled matter.
 5             I further certify that the transcript fees
 6   format comply with those prescribed by the Court and
 7   the Judicial Conference of the United States.
 8             This 17th day of August 2018.
 9
10
11                          s/Shawnie Archuleta
                            Shawnie Archuleta CCR No. 7533
12                          Official Court Reporter
                            The Northern District of Texas
13                          Dallas Division
14
15
16   My CSR license expires:  December 31, 2018
17   Business address:  1100 Commerce Street
                        Dallas, TX   75242
18   Telephone Number:  214.753.2747
19
20
21
22
23
24
25
```