IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR 1 8 2019
CLERK, U.S. DISTRICT COURT
By_____
Deputy

**UNITED STATES OF AMERICA**

    **Plaintiff(s)**

V.                                        Criminal Case No. 3:09-CR-00210

**JESSE WILLIAM MCGRAW**
**BOP Inmate No. 38690-177**

    **Defendant**

---

## MOTION REQUESTING A JUDICIAL RECOMMENDATION CONCERNING LENGTH OF RRC/HALFWAY HOUSE PLACEMENT

---

COMES NOW, the Defendant, Jesse McGraw, pro se and unskilled in the field of law, and respectfully moves this Honorable Court to recommend that the Bureau of Prisons ("BOP") afford the Defendant Residential Re-entry Center ("RRC")/halfway house placement time of 12 months preceding the end of his sentence. In support thereof, Defendant states as follows:

1. On March 17, 2011 Defendant was sentenced by this Court to a term of one hundred ten (110) months imprisonment followed by a September 18, 2018 sentence of twenty four (24) months for a probation violation.

2. The Court ordered Mr. McGraw *"remanded to the custody of the United States Marshal"* in both cases.

3. Pursuant to the Second Chance Act of 2007 ("SCA") the BOP may place a defendant into RRC/halfway house up to twelve months prior to his release date if it is determined that Mr. McGraw's placement in a halfway house is of *"sufficient duration to provide the greatest likelihood of successful reintegration into the community."*

4. The criteria that the Bureau of Prisons is to consider in assessing an individual applicants' eligibility for up to twelve months of RRC/Halfway House are: any statement made by the Court concerning the purposes that warranted a sentence to imprisonment and recommending the type of correctional facility that would be appropriate. 18 U.S.C. 3621(b)(4)(A), (B). (See **Exhibit 1a-Granted RRC motions-12 month**). An RRC/halfway house is a correctional facility with superior transitional programs to help inmates rebuild their ties to the community. The recommendation requested is non-binding on the BOP.

5. Title 18, United States Code, section 3582(c) provides that a "court may not modify a term of imprisonment once it has been imposed except" in very limited circumstances, and Mr. McGraw is not asking the court to modify the sentence. He is asking the Court to simply change the place of the final 12 months of his sentence per the Second Chance Act, a federal law.

6. Mr. McGraw is currently housed at the Federal Correctional Institution in Bastrop, Texas. His release date is May 12, 2020, and an RRC placement will not affect this.

7. According to Federal Bureau of Prisons' Memorandum for Chief Executive Officers, June 24, 2010, (see **Exhibit 2: Revised Guidance for Residential Reentry Center (RRC) Placements**) Extended Pre-Release RRC/Halfway House time decisions *"are to focus on RRC placement as a mechanism to reduce recidivism."* Mr. McGraw's inability to follow the rules of supervised release attests to his need for such comprehensive institutional rehabilitation.

8. Mr. McGraw is 34 years old. He is young enough to be reformed and rejoin law-abiding society with all the help available from prolonged placement at a federal halfway house.

9. Mr. McGraw has been employed most of his adult life in menial, subsistence-level security jobs at which he is no longer allowed. Employment prospects are not promising without the retraining assistance at a federal RRC.

10. The purpose of the Second Chance Act of 2007 is to improve the reintegration of offenders back into their respective communities and to reduce recidivism. While ultimately left to the discretion of the BOP, RRC/halfway house placement must be

    (A) conducted in a manner consistent with section 3621(b) of this title;

    (B) determined on an individual basis; and

    (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community, 18 U.S.C. § 3624(c)(1)-(2).

11. Mr. McGraw has participated in the following BOP programs in an attempt to prepare for his release and aid in his rehabilitation:

    a. Real Estate
    b. Money Smart
    c. Public Speaking
    d. CDL
    e. Residential Reentry Manager
    f. Job Fair
    g. German
    h. Job Search - Resume
    i. AIDS Awareness
    j. Stocks

12. A recommendation that Mr. McGraw be placed for 12 months at an RRC/Halfway House would be consistent with the reintegration principles of the Second Chance Act and would allow Mr. McGraw to better address the underlying impetus that led to commission of his past and instant offenses.

13. A recommendation that Mr. McGraw be afforded the maximum RRC/Halfway House placement time of 12 months would maintain the integrity of the disposition while still preserving the punitive aspect of his sentence and would allow Mr. McGraw the opportunity to address and correct his elevated risk of recidivism by virtue of his arrest

record, the nature of his offenses, his limited job skills and meager employment history, $31,000+ restitution, lack of savings or assets, poor family support, child support arrearage, medical bills, divorced, and 110 month and 24 month consecutive sentences. He will remain under the control of the BOP while in the supervised environment of the RRC as the law requires.

14. Mr. McGraw expressed exceptional remorse and contrition regarding his commission of his offenses.

15. The Inspector General of the BOP has noted in reports and public statements that the BOP is under-utilizing various programs available, such as RRC/halfway house and even such deserving inmates as Mr. McGraw are often denied extended RRC placement.

WHEREFORE NOW, above premises considered, the defendant respectfully requests that this Honorable Court GRANT his motion and all relief requested herein, issuing a judicial recommendation to the BOP that Defendant be granted the maximum placement time of 12 months of halfway house, reflecting the same and granting all other relief required by Law, Liberty, and Equity.

Done this 15th Day of April 2019

Respectfully Submitted,

X _Jesse W. McGraw_

Jesse McGraw, Register # 38690-177
FCI Bastrop
PO Box 1010
Bastrop, TX 78602

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have served a copy of this pleading upon the Clerk of the Court, VIA US Mail, properly addressed, ~~First-Class Postage prepaid~~. The accused further requests that a copy of this pleading be forwarded to all parties, VIA the CM/ECF System, as he is indigent, detained, and has no other means.

Done this 15th Day of April 2019

Respectfully Submitted,

X _____

Jesse McGraw, Register # 38690-177
FCI Bastrop
PO Box 1010
Bastrop, TX 78602

# EXHIBIT 1A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.            )<br>)<br>BRIAN M. QUIMBY         )<br>)<br>      ) | Criminal No. 13-39 Erie |

## MEMORANDUM ORDER

Brian Quimby has filed a *pro se* motion [ECF 69] requesting that the Court recommend to the Bureau of Prisons ("BOP") that he be placed in a Residential Re-Entry Center for a period of twelve (12) months prior to the end of his sentence.

It has always been the policy of this Court not to attempt to order the BOP to do anything, although the Court has often made recommendations to the BOP regarding the placement of defendants. Indeed, on Mr. Quimby's Amended Judgment [ECF 61] we stated: "I recommend assignment to a Center as close to this defendant's home in Sarasota, Fl as possible. He is truly a 'white collar' defendant, and I would not expect him to cause any problems wherever he is assigned. He is well educated, computer experienced and may be helpful to any administration."

Assuming there is no objection from the Government, therefore, I will grant Mr. Quimby's Motion and recommend that he be placed in a Residential Re-Entry Center for a period of twelve (12) months prior to the end of his sentence.

July 13, 2016          Maurice B. Cohill, Jr.
                       Senior United States District Judge

cc:   Brian Quimby
      #34515-068
      FCI Miami
      PO Box 779800
      Miami, FL 33177

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

    Plaintiff,

v.

Zubair Ahmed (B.O.P. Inmate 19303-424),

    Defendant,

Case No.: 1:07CR00647

ORDER

Defendant pleaded guilty to and was convicted of conspiring to provide material support to terrorists in violation of 18 U.S.C. § 2339A. His base offense level was 43 (deemed 52 for sentencing purposes). Defendant had never been arrested before this offense, but received a criminal history category of IV due to the nature of the crime. This resulted in a Guideline Range of 360 months to life imprisonment.

I sentenced defendant on June 10, 2010, to a term of 120 months, with three years supervised release to follow. The defendant's "out date" is August 17, 2018.

He has filed a *pro se* "Motion Requesting a Judicial Recommendation Concerning Length of RRC/Halfway House Placement." (Doc. 207). The government opposes the motion. (Doc. 208).[1]

For the reasons that follow, I grant the motion and recommend that the Bureau of Prisons *forthwith* arrange for the defendant's release to a halfway house in his hometown, Chicago.

---

[1] The defendant filed his motion on July 10, 2017; the government its response on July 18, 2017. Lest there be any doubt, the delay in deciding the motion was entirely inadvertent, due to my own oversight as to its pendency. The delay was by no means whatsoever intentional. Thus, no reader should infer that my tardiness in preparing and filing this order indicates any hesitancy on my part to grant the defendant's request. I regret my delay in addressing the defendant's motion; the consequences of that delay are, unfortunately, incurable.

1

## Discussion

Title 18 U.S.C. § 3624(c)(1) authorizes the Bureau's Director to assign an inmate during the last months of his term (not to exceed twelve months) to a halfway house:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Halfway house placement is "a mechanism to reduce recidivism." (Doc. 207, Ex. 2 (Bureau of Prisons Director's Memorandum for Chief Executive Officers: "Revised Guidance for Residential Reentry Center (RRC) Placements")). The Second Chance Act instructs that an inmate's placement should be "of sufficient duration to provide the greatest likelihood of successful reintegration in the community." 18 U.S.C. § 3624(c)(6)(C). Although the Director is ultimately responsible for defendant's placement, the Bureau must consider "any statement" I make "recommending a type of penal or correctional facility as appropriate." *See* 18 U.S.C. § 3621(b)(4)(B).

The government's principal contention appears to be that the defendant, in light of the nature of his conviction, deserves no leniency and should not return to his home community until the latest date (usually six months prior to expiration of the term) as of which the Bureau would place him in the halfway house to prepare for release from custody.

I disagree with the government for several reasons.

First: the government says I do not know what the defendant's conduct has been in prison. So saying, the government ignores the courses that defendant has taken on subjects as diverse as Aquiculture and Organic Farming to Computer Applications, Financial Literacy, and Technology 101 to Stress Management and Decision-Making to College Correspondence Courses and Spanish.

2

More to the point, the government offers no evidence as to the defendant's conduct, good or bad, while in custody. But the government certainly could have found out what his record as an inmate was. Its silence in that regard is telling.

Second: with an "out date" one month short of two years before his imposed term ends on July 12, 2020, it is readily apparent that the defendant has substantial good time credit.[2]

That fact, like the government's silence, is telling. Indeed, it suggests that the professed ignorance about the defendant's conduct in prison is not just telling; it appears disingenuous.

Admittedly, the defendant's crime was serious. I took that fact expressly into account at sentencing. I suggest, though, that now is not the time to give, as the government does, too much heed to that factor.

What really matters at this point is assessment of what, if any risk, the defendant poses to the community. Given his apparent rehabilitation, as evidenced by his good time credit and educational pursuits, further imprisonment is simply punitive.

Punishment for punishment's sake is not a § 3553(a) factor.

Nor should or could it be in a penal system in the service of the Rule of Law. Demanding that the defendant remain in prison until the last grain of sand in the hour glass has run down, the government, it seems to me, has no real motivation other than punishment.

To be sure, the government professes concern about community safety. While that is, of course, a core concern, the government offers nothing to substantiate its apprehension.

---

[2] Defendant can earn 42 or 54 days of good time credit per year, depending on the progress he makes toward earning a GED or high school diploma. *See* 28 C.F.R. § 523.20(c). With an "out date" twenty-three months short of the end date of the imposed term, I can infer that defendant may well have earned all the good time credit available to him.

3

The defendant will return to Chicago at some point. Is there any reason to believe that hastening his return by few months (during which he'll still be confined under Bureau control) endangers anyone? The government offers, and I see none.

Instead, I believe that an early start on reentry within the halfway house setting can enhance the likelihood of an uneventful period of supervised release and long-term law-abiding behavior.

When he returns home, defendant will do so tarred with the indelible brush marks of one who wanted to provide substantial assistance to overseas terrorists. That stain will never wash off or be wiped away.

For someone so convicted, reentry will be especially difficult.

That being so, it makes better sense - and better serves the community - to allow the defendant to enter a halfway house now, rather than wait until the usual six months before the end of his term.

Delay, on the other hand, can serve no useful purpose, for the defendant or his community.

## Conclusion

In light of the foregoing, I grant the defendant's motion and recommend that the Bureau of Prisons promptly end his prison confinement and transfer him to a Residential Reentry Center to begin the process of reentry into his home community.

It is, therefore, hereby

ORDERED THAT:

1. The defendant's Motion Requesting a Judicial Recommendation Concerning Length of RRC/Halfway House Placement (Doc. 207), be, and the same hereby is granted;

2. The United States Attorney shall on receipt of this Order, immediately forward it to the appropriate Bureau of Prisons officials responsible for deciding when to transfer prison inmates to halfway house custody; and

3. The Clerk shall serve a copy of this Order on the Warden of the Seagoville (Texas) Federal Correctional Institution and the defendant's Case Manager at that institution.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

# EXHIBIT 1B

Federal Bureau of Prisons

Washington, DC 20534

June 24, 2010

MEMORANDUM FOR CHIEF EXECUTIVE OFFICERS

FROM:     D. Scott Dodrill, Assistant Director
          Correctional Programs Division

SUBJECT:  Revised Guidance for Residential Reentry Center
          (RRC) Placements

This memorandum provides guidance to staff when making inmates' pre-release Residential Reentry Center (RRC) placement decisions. Assessment and decision-making practices are to focus on RRC placement as a mechanism to reduce recidivism. Recidivism reduction results in cost efficiencies, less victimization, and safer communities.

Our RRC resources are limited and must be focused on those inmates most likely to benefit from them in terms of anticipated recidivism reduction. In other words, our decisions are to be based on an assessment of the inmate's risk of recidivism and our expectation that RRC placement will reduce that risk. Our strategy is to focus on inmates who are at higher risk of recidivating and who have established a record of programming during incarceration, so that pre-release RRC placements will be as productive and successful as possible.

As Chief Executive Officers, you play a vital role in implementing the Bureau of Prisons' (Bureau) reentry strategy, including RRC utilization. This guidance will assist you in making RRC placement decisions.

**GENERAL CONCEPTS** - The following general concepts apply to all RRC placement assessments and decision-making:

**Eligibility vs. Appropriateness** - When making RRC placement determinations, it is critical that staff understand the difference between eligibility and appropriateness. All inmates are statutorily eligible for up to 12 months pre-release RRC

-1-

placement. Nevertheless, not all inmates are appropriate for RRC placement, and for those who are appropriate, the length of the RRC placement must be determined on an individual basis in accordance with this guidance.

**Individual Assessments Required** – Inmates must continue to be individually assessed for their appropriateness for and the length of pre-release RRC placements using the following five factors from 18 U.S.C. § 3621(b):
    (1) The resources of the facility contemplated;
    (2) The nature and circumstances of the offense;
    (3) The history and characteristics of the prisoner;
    (4) Any statement by the court that imposed the sentence:
        (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
        (b) recommending a type of penal or correctional facility as appropriate; and
    (5) Any pertinent policy statement issued by the U.S. Sentencing Commission.

These individual assessments occur as part of the inmate classification and program review process, with the unit manager holding decision-making responsibility at the unit level. Institution- or region-specific parameters for RRC placement decision-making are prohibited.

**RRC Placements of More Than Six Months** – Regional Director approval of RRC placements longer than six months is no longer required.

**Residential Drug Abuse Program Graduates** – Inmates who successfully complete the institution-based portion of the Residential Drug Abuse Program (RDAP) will continue to be assessed for pre-release RRC placements according to the guidance in the <u>Psychology Treatment Programs</u> policy.

**Coordination Between Institution Staff and Community Corrections Management Staff** – Community Corrections Management (CCM) staff must continue to review referral documents and other pertinent information for every RRC referral. If CCM staff question the appropriateness of the referral or the length of the requested placement, they must communicate these concerns to the referring institution. Differing recommendations will be resolved at the appropriate level within the regional management structure. Under no circumstances should CCM staff unilaterally deny RRC referrals or adjust placement dates, unless these determinations can be linked directly to a lack of RRC bedspace or fiscal resources.

**Medical and Mental Health Concerns** - When considering RRC placement for inmates with significant medical or mental health conditions, institution staff are strongly encouraged to coordinate release planning with CCM staff and Transitional Drug Abuse Treatment staff (for mental health concerns). If an inmate's condition precludes residential placement in an RRC, and if staff can make appropriate arrangements to secure the community-based medical and/or mental health services these inmates will need, direct placement on home detention should be considered.

**Inmates Who Decline RRC Placement** - If an institution recommends release through a community-based program and the inmate declines, institution staff should counsel the inmate as to the benefits of a structured reentry program. However, if the inmate continues to decline this opportunity, she/he may do so without being subject to disciplinary action.

**Inmates Who are Inappropriate for RRC Placement** - Inmates who, during incarceration, have refused programming or failed to engage in activities that prepare them for reentry may be inappropriate for RRC placement. Similarly, inmates with recent, serious, or chronic misconduct and those who have previously failed an RRC program may be inappropriate.

RRCs provide opportunities for inmates to acquire the support systems, e.g., residence, employment, follow-up treatment, they will need to live a crime-free life, but inmates must be ready to take advantage of these opportunities. If they have clearly demonstrated through their behavior that they are not ready, RRC programming is unlikely to result in behavioral change and would be a waste of the Bureau's resources, as well as place the public at undue risk.

Professional judgment must be exercised, insofar as inmates with some misconduct, or some refusal to participate in programming, may still be appropriate for RRC placement. Staff must exercise their discretion in determining whether an inmate is ready to take advantage of the opportunities and expanded liberty that RRCs offer.

If staff decide not to refer an inmate for RRC placement, the inmate's release should be carefully coordinated with U.S. Probation or Court Services and Offender Supervision Agency (DC Code inmates).

**Professional Judgment** - RRC placement, in and of itself, is not a reward for good institutional behavior, nor is it an early release program or a substitute for the furlough program. RRC placement and length of placement decisions cannot be reduced solely to a classification score or any other type of arbitrary categorization. While staff assessment and analysis of tools such as the Custody Classification Form (BP-338) and the Inmate Skills Development (ISD) Plan are helpful in establishing broad-based groupings, staff must continue to exercise their professional judgment when making individual inmate RRC placement decisions and be prepared to justify those decisions.

## LENGTH OF RRC PLACEMENT

### General Guidelines

- **Prospective Application** - Inmates with previously established RRC transfer dates will not be reconsidered under this guidance.

- **90 Days Minimum Placement** - With the exception noted below under the heading of Lower-Risk Inmates, inmates should be considered for at least 90 days pre-release RRC placement whenever possible.

- **High-Risk Versus Low-Risk Inmates** - RRCs are most effective, in terms of recidivism reduction, for inmates at higher risk for recidivism. Consequently, appropriate higher-risk inmates should be considered for longer RRC placements than lower-risk inmates. The BP-338 measures some of the factors that predict risk. Ordinarily, the lower the BP-338 score, the lower the risk; conversely, the higher the score, the higher the risk. Therefore, low-, medium-, and high-security inmates tend to be higher risk than minimum-security inmates.

  Similarly, the ISD tool identifies deficits that may contribute to recidivism. Inmates with a significant number of deficits may be at higher risk for recidivism than those with few or no deficits. When making RRC placement decisions, staff should ensure that the BP-338 and ISD Assessment have been accurately completed. While neither tool can be relied upon solely, they are helpful tools in assessing an inmate's risk level.

**Lower-Risk Inmates**

- **Consider Home Detention Option** – With the exception of RDAP graduates, institution staff will evaluate minimum-security inmates who have an approved release residence to determine if direct transfer from an institution to home detention is appropriate. If so, this determination will be noted in item 11 of the Institutional Referral for RRC Placement form, and the requested placement date (item 3.b.) will be the inmate's home detention eligibility date. These procedures are to be followed even if this results in a community-based placement of fewer than 90 days.

- If a minimum-security inmate is not appropriate for direct placement on home detention, staff will request an RRC placement of sufficient length to address the inmate's reentry needs.

- CCM staff are to ensure that procedures are in place for the direct placement of inmates on home detention, or after only a brief stay (14 days or less) in an RRC. At a minimum, CCM staff must monitor their minimum-security population weekly and follow up with RRC contractors to ascertain why eligible minimum-security inmates have not been referred for placement on home detention.

**Higher-Risk Inmates** – As previously stated, in terms of recidivism reduction, inmates at higher risk for recidivism stand to benefit most from RRC services. When considering the length of the RRC placement for higher-risk inmates, staff should consider the following:

- **History of Individual Change** – Assess whether the inmate's history of individual positive change during incarceration indicates an ability and willingness to take advantage of opportunities for positive reintegration to the community. Based on that history, staff must predict whether the inmate is likely to respond positively to the highly structured regimen of an RRC, and whether the inmate will avail her/himself of the available RRC opportunities.

- **History of Program Participation** – Assess the inmate's history of successful completion of, or participation in, available programming opportunities during incarceration, including programming which addresses the deficits identified through the ISD System. In particular, determine whether the inmate completed or made satisfactory progress toward completing a program shown to reduce recidivism, such

-5-

as any of the cognitive/behavioral treatment programs described in the <u>Psychology Treatment Programs</u> Program Statement, as well as academic and vocational training programs.

- **Inmate's Community Support Systems** – Assess the inmate's available community support systems, e.g., housing, employment, etc.

- **Length of RRC Placement** – Longer RRC placements should be considered for inmates whose following factors are high:

  - Risk for recidivism;
  - Demonstrated successful participation in or completion of programming opportunities; and
  - Need to establish community support systems.

Your assistance in implementing these procedures is appreciated. I look forward to working with you as we seek to effectively utilize the Bureau's limited RRC resources.

